[Cite as *Gaffney v. Soukup*, 2017-Ohio-7362.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**GEAUGA COUNTY, OHIO**

| | | |
|---|---|---|
| SUSAN E. GAFFNEY, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2016-G-0104** |
| LINDA D. SOUKUP, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 15 P 000576.

Judgment: Reversed and remanded.

*Rubin Guttman* and *Ann Marie Stockmaster*, Rubin Guttman & Associates, L.P.A., 55 Public Square, Suite 1860, Cleveland, OH 44113 (For Plaintiffs-Appellants).

*Frank G. Mazgaj,* and *Emily R. Yoder*, Hanna, Campbell & Powell, L.L.P., 3737 Embassy Parkway, Suite 100, Akron, OH 44333 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1} Appellants, Susan E. Gaffney and Michael Gaffney, appeal the trial court's decision awarding summary judgment in favor of appellee, Linda D. Soukup aka Linda D. Zipple. We reverse.

{¶2} Susan, Linda's daughter, was visiting her mother in August 2013 at her single family home. Susan had not been to her mother's home for at least two months. She entered through the open garage door and stayed for about an hour. Upon leaving,

Susan exited through the front door, which led to a small front porch and a set of stairs that Linda had modified with boards and a plastic exercise step since her cement patio landing was sinking. The exercise step was rectangular and the height of a child's step stool. It consisted of a solid black piece and had four gray feet attached to each corner. The exercise step was not secured to the cement patio on which it was placed and not attached to the steps to which it abutted. Susan stepped onto the exercise step at the bottom of the stairs, it shifted, and her ankle snapped.

{¶3} Susan filed suit asserting that Linda negligently caused her injuries by creating and maintaining a dangerous condition on her property and failing to warn Susan of the danger. Susan's husband, Michael, asserted a claim for loss of consortium.

{¶4} Following discovery, the trial court found the condition was open and obvious and granted Linda summary judgment on all claims.

{¶5} Susan asserts one assignment of error:

{¶6} "The trial court erred, as a matter of law, by granting summary judgment upon plaintiff-appellants' premises liability claim."

{¶7} Appellate courts review summary judgment decisions anew and apply the same standard used by the trial court. Civ.R. 56(C) dictates the summary judgment standard stating in part:

{¶8} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶9}   A "material fact" for summary judgment depends on the type of the claim being litigated.  *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶10} Furthermore, "the trial court is not permitted to weigh the evidence or choose among reasonable inferences.  *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 121 [18 O.O.3d 354, 413 N.E.2d 1187].  Rather, the court must evaluate the evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party.  *Id.*"  *Stewart v. Urig*, 176 Ohio App.3d 658, 2008-Ohio-3215, 893 N.E.2d 245, ¶10 (9th Dist.)

{¶11} In order to establish actionable negligence, Susan must show the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach.  *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998); *Zuzan v. Shutrump*, 155 Ohio App.3d 589, 2003-Ohio-7285, 802 N.E.2d 683, ¶6 (7th Dist.)

{¶12} The legal duty owed by a landowner to one who enters upon his land depends on the status of the entrant.  *Shump v. First Continental–Robinwood Assoc.,*

3

71 Ohio St.3d 414, 417, 644 N.E.2d 291 (1994). "A social guest is someone the owner or occupier of land invites onto the property for the purpose of social interaction." *Howze v. Carter*, 9th Dist. Summit No. 24688, 2009-Ohio-5463, ¶18, citing *Scheibel v. Lipton,* 156 Ohio St. 308, 329, 102 N.E.2d 453 (1951). The Supreme Court describes the duty owed to a social guest by a homeowner as:

{¶13} "That duty of the host * * * is to exercise ordinary care not to cause injury to his guest by any act of the host or by any activity carried on by the host while the guest is on the premises. Coupled with this is the duty of the host to warn the guest of any condition of the premises known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." *Id.*

{¶14} However, if a condition on one's property is open and obvious, then a homeowner has no duty to warn her guest of the danger because the landowner may reasonably expect individuals encountering the condition to discover the danger and take appropriate measures to protect themselves from it. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). The rationale for the doctrine is that the open and obvious nature of the hazard itself is sufficient warning to the individual encountering it. *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161, ¶10 (2d Dist.), quoting *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶13. The open-and-obvious test "'properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it.'" *Id.*

4

{¶15} The critical inquiry is whether the danger is "discoverable or discernible by one acting with ordinary care under the circumstances." *Holcomb v. Holcomb*, 12th Dist. Clermont No. CA 2013-10-080, 2014-Ohio-3081, 2014 WL 3420781, ¶16, quoting *Vanderbilt v. Pier 27, LLC*, 2013-Ohio-5205, 2 N.E.3d 966, ¶12 (12th Dist.). The injured party must not have actually seen the condition before encountering it. Instead, we must decide whether a reasonable person exercising ordinary care in the same circumstances would have perceived the risk, avoided it, and prevented injury. *Id.*

{¶16} Whether a person owes a duty of care to protect individuals against an open and obvious danger is generally for a court to decide. However, whether the hazard in a case is open and obvious is a fact-driven issue that "may involve a genuine issue of material fact, which a trier of fact must resolve." *Henry v. Dollar Gen. Store*, 2d Dist. Greene No. 2002-CA-47, 2003-Ohio-206, 2003 WL 139773, ¶10, citing *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

{¶17} Whether a risk is open and obvious can be decided by a court as a matter of law when only one conclusion can be drawn from the established facts. *McDonald v. Marbella Restaurant*, 8th Dist. Cuyahoga No. 89810, 2008-Ohio-3667, ¶30; *Ray v. Wal-Mart Stores, Inc.*, 4th Dist. Washington No. 08CA41, 2009-Ohio-4542, ¶29. If reasonable minds could disagree about whether the condition presents an open and obvious danger, then the trier of fact must resolve this issue before a court determines as a matter of law that the landowner has a duty. *Schmitt v. Duke Realty, LP*, 10th Dist. Franklin No. 04AP-251, 2005-Ohio-4245; *Henry*, supra, at ¶11.

{¶18} "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the

5

condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Armstrong v. Best Buy Co.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶13. Furthermore, when a guest admits "knowing of the danger, summary judgment is easily granted. Clearly, the danger is open and obvious when the invitee admits to having had actual knowledge of the danger prior to being injured by that danger." *Zuzan, supra, at* ¶7.

{¶19} Here, Susan exited through the front door. Linda opened the front door and held it open while Susan exited the home. It was afternoon and Susan was able to see the wooden boards resting on the middle step. She was also able to see the bottom stair consisting of the plastic exercise step. She was not, however, able to discern that this makeshift bottom step was not secured. Upon stepping onto the plastic step, Susan watched it shift toward the house and her ankle snap.

{¶20} The concrete steps leading out the front door were in existence since Linda purchased the home. She had noticed that the bottom stair and cement patio were sinking. Linda preferred using this set of stairs because it had a handrail. Therefore, she purchased a board, which she had cut into two at a hardware store. She nailed the boards together and placed them on the middle step. She then added the exercise step to the bottom of the stairs to serve as the bottom step because her placement of the boards on the middle step created a large gap between the middle step and cement patio.

{¶21} Linda placed the exercise step at the bottom of her stairs about eight days before Susan's fall. Linda knew the bottom step was not secured. Susan had never visited when the exercise step or the boards were in place.

6

{¶22} The danger here is that the bottom step was not secured. Linda knew, but she failed to warn Susan.

{¶23} After the fall, Linda saw that the exercise step had moved.

{¶24} Susan acknowledges seeing the boards on the stair before traversing the steps. She agreed that had she been concerned about the safety of the stairs, she could have exited through the garage, which is the way she entered. Susan stated:

{¶25} "Q. * * * So you went to exit your mom's house, walk me through what happens.

{¶26} "A. Well, I walked out the – out of the living room, out the front door, stepped on the step with my right foot, that's the step that has the wood on it.

{¶27} "Q. And the wood was there, correct?

{¶28} "A. Correct. And then I stepped down on my left foot, which shows in this picture, onto a plastic stepstool.

{¶29} "Q. The exercise step?

{¶30} "A. Yeah, yeah, I guess that's what it is. And then when I stepped on it it shifted to my – like kind of forward and to the left, which would be towards the house, and when it shifted I felt and saw my ankle snap and –

{¶31} "* * *

{¶32} "Q. You didn't have any concerns about the wood that was placed on the steps, correct, prior to the fall?

{¶33} "A. No, it was my first time seeing it, I didn't really give it much thought, I just – that's what was there and that's what I was going down.

**{¶34}** "Q. Okay. Certainly if you were concerned you could have gone out through the garage?

**{¶35}** "I mean, if you felt that this was an unsafe setup you could have gone --

**{¶36}** "A. I could have stopped and thought about it, I guess, and said, Wait a minute.

**{¶37}** "* * *

**{¶38}** "A. I mean, I guess that's an option, I could have turned around, but it didn't seem logical.

**{¶39}** "* * *

**{¶40}** "Q. And there's nothing that concerned you about the exercise step when you exited the house?

**{¶41}** "A. No."

**{¶42}** Although Susan saw the bottom step, she had no notice that it was unsecured. Upon construing the evidence most strongly in Susan's favor, neither the parties' testimony nor the photographs make the nature of the bottom step readily apparent such that it is clear that a reasonable person descending these stairs would have perceived that the bottom step was not secured to the patio or the adjacent stairs.

**{¶43}** The undisputed facts permit reasonable minds to reach different conclusions, and as such, a jury question exists. "[W]here the ultimate fact must be determined from inferences to be drawn from other facts and where reasonable minds may reach different conclusions from such inferences, then it is proper to submit the determination of the ultimate fact to the jury." *Bennett v. Sinclair Refining Co.,* 144 Ohio St. 139, 148-150, 57 N.E.2d 776 (1944).

8

{¶44} Accordingly, summary judgment was inappropriate, and Susan's sole assigned error has merit.

{¶45} The trial court's judgment is reversed and remanded.

TIMOTHY P. CANNON, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶46} I dissent and would affirm the decision of the trial court on the grounds that the purported hazardous condition in this case – an unsecured exercise step/stair-stepper placed at the bottom of a step leading off of a patio – was open and obvious to Gaffney at the time of her injury.

{¶47} The open and obvious doctrine rests on the premise that "the open and obvious nature of the hazard itself serves as a warning," and, consequently, "the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). "When applicable * * *, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5.

{¶48} In the present case, the condition of the stairs leading off of Soukup's patio was open and obvious. Gaffney testified that she "was able to look down and see the top of the wooden boards and the top of the black stair stepper." Gaffney, however, did not give much thought to the condition of the stairs: "I didn't really give it much thought, * * * that's what was there and that's what I was going down. * * * I could have stopped and thought about it, I guess, and said, 'wait a minute.'"

{¶49} The open and obvious condition of stairs is the sort of hazard to which courts routinely apply the open and obvious doctrine. *Galligan-Dent v. Tecumseh Outdoor Drama*, 4th Dist. Ross No. 16CA3534, 2016-Ohio-7907, ¶ 22 ("the hazard associated with the asphalt ramp/apron at the base of the stairway was open and obvious"); *Jung v. Davies*, 2d Dist. Montgomery No. 09-CV-5867, 2011-Ohio-1134, ¶ 43 ("[e]ven assuming, arguendo, that the brick entryway violated some administrative regulation with which it was required to comply, the condition of the steps, as they actually existed, was apparent to anyone using or observing them"); *Riehl v. Bird's Nest Inc.*, 6th Dist. Ottawa No. OT-09-003, 2009-Ohio-6680, ¶ 52 ("the difference in width between the bottom stair and the sidewalk and the fact that there was a difference in height between the sidewalk surface and ground where appellant stepped were open and obvious conditions"); *Trippett v. Trippett*, 6th Dist. Erie No. E-05-097, 2006-Ohio-3379, ¶ 11 ("the bags of books on the stairs constituted an open and obvious condition"); *Knapik v. Armstrong*, 11th Dist. Ashtabula No. 2003-A-0100, 2005-Ohio-59, ¶ 17 ("there was uncontradicted evidence that the condition of the stairway was open and obvious and that Barbara Knapik was aware of that condition").

{¶50} The majority finds an issue upon which reasonable minds could differ in that Gaffney "had no notice that [the stair-stepper] was unsecured * * *[,] that the bottom step was not secured to the patio or the adjacent stairs." *Supra* at ¶ 42. On the contrary, no reasonable person would expect the exercise step in question, fairly described by Gaffney as a "plastic footstool," to be secured to anything. An exercise step is a moveable elevated platform used in aerobic exercise, improperly employed by Soukup as a makeshift bottom step. Gaffney knew this and could reasonably have been expected to appreciate the attendant hazards of such employment.

{¶51} For the foregoing reasons, I respectfully dissent and would affirm the decision of the trial court.