[Cite as *Thomas v. Chimera*, 2023-Ohio-2132.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BRYNN S. THOMAS, ET AL. | : | JUDGES: |
| | : | |
| | : | |
| Plaintiffs-Appellants/Cross-Appellees | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 2022CA00125 |
| CAROLYN CHIMERA, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees/Cross-Appellants | : | O P I N I O N |
| | : | |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of Common Pleas, Case No. 2020CV00160

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     June 26, 2023

APPEARANCES:

For Plaintiffs-Appellants/Cross-Appellees:

A. JAMES TSANGEOS
1810 – 36th Street NW
Canton, OH 44709-2739

For Defendant-Appellee/Cross-Appellant:

WM. SCOTT FOWLER
100 Federal Plaza East, Suite 926
Youngstown, OH 44503-1811

*Delaney, J.*

{¶1} Plaintiffs-Appellants/Cross-Appellees Brynn S. Thomas, Dawn M. Thomas, and Michael E. Thomas and Defendant-Appellee/Cross-Appellant Carolyn Chimera appeal the September 2, 2022 judgment entry of the Stark County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Complaint for Personal Injury

{¶2} On August 7, 2018, Plaintiffs-Appellants/Cross-Appellees Brynn S. Thomas, Dawn M. Thomas, and Michael E. Thomas initially filed a complaint for negligence against Defendant-Appellee/Cross-Appellant Carolyn Chimera and Defendants Sara and Walter Wolosiansky in the Stark County Court of Common Pleas. The Thomases dismissed the complaint without prejudice on October 21, 2019.

{¶3} On January 21, 2020, the Thomases refiled their complaint for negligence in the Stark County Court of Common Pleas, alleging personal injury to Brynn S. Thomas and a derivative claim for loss of parental consortium by Dawn M. and Michael E. Thomas. The complaint alleged that on July 27, 2014, Brynn S. Thomas suffered a permanent injury as a result of the negligence, recklessness, and/or intentional conduct of Defendant-Appellee/Cross-Appellant Carolyn Chimera and Defendants Sara and Walter Wolosiansky. A summary of the facts alleged that on July 27, 2014, Brynn S. Thomas attended a birthday party located on property owned by Sara and Walter Wolosiansky (hereinafter the "Premises"). Carolyn Chimera hosted the birthday party on the Premises with the permission of the Wolosianskies. There was a zipline on the Premises, constructed by Walter Wolosiansky. Chimera instructed Brynn S. Thomas on how to use

the zipline. When Brynn started going down the zipline, she fell off. The Thomases claimed that Brynn suffered permanent injuries to her left knee as a result of her fall.

**Chimera and Wolosianskies' Motion for Summary Judgment**

{¶4} Chimera filed a motion for summary judgment on September 16, 2020. Sara and Walter Wolosiansky filed their motion for summary judgment on November 5, 2020. In their motions, Chimera and the Wolosianskies argued there were no genuine issues of material fact, and they were entitled to judgment as a matter of law on all counts in the Thomases' complaint. On January 29, 2021, the trial court issued its judgment entry, denying Chimera's motion for summary judgment and granting the Wolosianskies' motion for summary judgment.

{¶5} The trial court first determined that Brynn was engaged in a recreational activity at the time of her fall from the zipline to which primary assumption of the risk applied. The trial court next found there was a genuine issue of material fact as to whether Chimera's actions in instructing Brynn to use the zipline amounted to reckless conduct. As to the Wolosianskies, the trial court found under R.C. 1533.181, Ohio's Recreational User Statute, the Wolosianskies did not incur liability for injuries sustained on the zipline by recreational users such as Brynn. Finally, the trial court found there was no genuine issue of material fact as to Count Six of the Thomases' complaint, spoliation of the evidence when the Wolosianskies constructed a new zipline in June 2017.

{¶6} The trial court included Civ.R. 54(B) language in its judgment entry. The Thomases and the Wolosianskies appealed the trial court's January 29, 2021 judgment entry to this Court in *Thomas v. Chimera*, 5th Dist. Stark No. 2021CA00016, 2021-Ohio-4204 ("*Thomas I*"). Chimera did not appeal. In the Thomases' appeal, they raised two

assignments of error: (1) the trial court erred when it found Ohio's Recreational User Statute provided immunity to the Wolosianskies for the injuries suffered by Brynn on their property, and (2) the trial court erred when it found the Wolosianskies were entitled to judgment as a matter of law on the Thomases' claim for spoliation. The Thomases did not appeal the trial court's determination that zip lining was a recreational activity.

{¶7} On November 29, 2021, we overruled the Thomases' assignments of error and affirmed the trial court's January 29, 2021 judgment entry as to the Wolosianskies. We held our affirmance rendered the Wolosianskies' cross-assignments of error moot. *Thomas*, 2021-Ohio-4204, ¶ 42.

**Chimera's Motion for Summary Judgment**

{¶8} After the appeal, the matter returned to the trial court for further proceedings with the Thomases and Chimera. Chimera filed a motion for summary judgment on April 1, 2022. She argued in her motion that she was entitled to judgment as a matter of law because she immune from liability under R.C. 1533.181, the Recreational User Statute. The Thomases responded to the motion and Chimera replied.

{¶9} On June 24, 2022, the trial court issued a thoroughly analyzed judgment entry denying Chimera's motion for summary judgment. The trial court first found the Thomases' claims of negligence against the Wolosianskies and Chimera were based on multiple theories of negligence: premises liability and the alleged acts and omissions of the defendants. In her motion for summary judgment, Chimera only argued she was entitled to immunity based on the Recreational User Statute. In order for Chimera to be entitled to statutory immunity under R.C. 1533.181, Chimera would have to be an "occupant" of the Premises. The trial court referred to our decision in *Thomas I,* 2021-

Ohio-4204, where this Court affirmed the trial court's judgment under R.C. 1533.181 as to the Wolonsianskies: (1) the Premises was nonresidential, (2) the zipline system was a structure for purposes of R.C. 1533.181, (3) Brynn, as an invited guest of Chimera, was a "recreational user" of the Premises, and (4) the Wolosianskies were immune from liability because the Thomases' claims against the Wolosianskies related to a defect in the Premises. *Thomas I, supra* at ¶¶ 27, 31, 23, 34, and 35. The trial court noted that our findings applied to the Wolosianskies, not Chimera. However, based on this Court's determination of R.C. 1533.181 and the Premises, the trial court found that claims against Chimera with respect to the safety of the Premises were now the law of the case.

{¶10}  The trial court found the analysis did not end with our decision in *Thomas I* where we eliminated premises liability as a theory of negligence. Premises liability considered the conditions or defects of the premises, but the principles of general negligence considered the acts and omissions of the alleged tortfeasor. The trial court found that when the cause of the injury had nothing to do with the premises as defined by R.C. 1533.181, R.C. 1533.181 did not bar a plaintiff from pursuing a claim for negligence based on the acts or omissions of the alleged tortfeasor.

{¶11} The trial court concluded that the issue remaining after *Thomas I* was not whether Chimera was an "occupant" under R.C. 1533.181 but whether Chimera was entitled to judgment as a matter of law relative to her acts or omissions on the day Brynn was injured. The issue was "whether Chimera's *conduct* in providing Brynn Thomas with encouragement with respect to the zipline and placement of her hands after Brynn Thomas informed her that she was too short to use the zipline was reckless." (Emphasis sic). (Judgment Entry, Jun. 24, 2022). When reviewing the facts in a light most favorable

to the Thomases, the trial court found there was conflicting Civ.R. 56 evidence as to Chimera's instructions to Brynn on how to use the zipline. The trial court concluded there were genuine issues of material fact "whether it was reckless for Chimera to encourage Brynn to use the zipline by gripping the bar in a location other than where it was intended to be held. Genuine issues of material fact remain regarding whether the risk of free falling is an inherent risk of zip lining and whether nothing can be done to prevent that risk and to make zip lining safe. Accordingly, there are issues of fact as to whether the defense of primary assumption of the risk applies." (Judgment Entry, June 224, 2022). The trial court did not include Civ.R. 54(B) language in its judgment entry.

**Proposed Jury Instructions**

{¶12} After the trial court's denial of Chimera's motion for summary judgment, the matter proceeded towards a jury trial. The Thomases filed their proposed jury instructions on August 22, 2022. Relevant to this appeal, the Thomases included two additional jury instructions. First, they included an instruction for "INVITEE/SOCIAL GUEST," which stated as follows:

An "invitee" is a person who rightfully enters and remains on the property of another at the express or implied invitation of the owner or occupant and for a beneficial purpose to the owner or occupant, such as a social gathering. A host owes a social guest a duty to exercise ordinary care not to cause injury by any activities carried on by the host on the premises. *Mendell v. Wilson*, 5th Dist. Stark No. 2001CA00258, citing *Schneibel v. Lipton*, 156 Ohio St. 308, 328 (1951).

In order to be classified as a social guest, there must be evidence of an actual invitation the host extended to the guest, express or implied. *Ard v. Fawley*, 135 Ohio App.3d 566, 1999-Ohio-921, 735 N.E.2d 14.

{¶13} Second, the Thomases proposed a jury instruction for "CHILDREN ENTITLED TO HIGHER DEGREE OF CARE," which stated:

Children are entitled to a higher degree of care than adults, and the amount of care required to discharge a duty to a child is greater than that required to discharge a similar duty to an adult.

Youthful persons are generally entitled a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter. The same discernment and foresight in discovering defects and dangers cannot be reasonably  expected of them, that older and experienced persons habitually employ.

The duty of an occupier to his invitee or social guest presupposes that the amount of care will vary depending upon the circumstances, one of which is the age of the guest.

The duty to warn necessarily will vary with the individual guest because the host must consider the age of his social guest in determining her ability to know and discover dangerous conditions.

*De Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 127; *DeGroodt v. Skrbina*, 111 Ohio St. 108; *Peyer v. State Water Serv. Co.*, 130 Ohio App.3d 426, 433.

{¶14} Chimera submitted her proposed jury instructions on August 25, 2022. Chimera included proposed jury instructions for recreational activity.

**Motion to Exclude Testimony**

{¶15} On August 23, 2022, Chimera filed a motion to exclude the testimony of the Thomases' expert, Nathan Morrill. Morrill was a mechanical engineer. In his trial deposition, Chimera argued that Morrill gave his expert opinion as to what constituted "reckless" conduct, which infringed on the jury's function as the trier of fact.

{¶16} The Thomases filed a response to the motion. They argued that they did not intend on proving Chimera was reckless based on the design, construction, installation, repair, or maintenance of the zipline. The Thomases intended to introduce Morrill's testimony on the training and knowledge required of a person operating and supervising a zipline system.

**Jury Trial**

{¶17} The jury trial commenced on August 29, 2022. The following facts were adduced from the trial.

*The Zipline*

{¶18} Sara Wolosiansky owns a speech pathologist practice, where her husband Walter Wolosiansky also works. Chimera has worked at the practice with the Wolosianskies for over 25 years.

{¶19} The Wolosianskies own property located on East Caston Road, Summit County, Ohio ("the Premises"). The Premises is made up of multiple parcels and includes a multi-occupancy home, a volleyball court, a zipline, food shelter, cornhole equipment,

and a pond. The Wolosianskies testified there had never been an accident based on the use of the zipline before or after the incident on July 27, 2014.

{¶20} The zipline was built by Walter Wolosiansky and his son. It was twelve to fifteen feet above the ground and did not have a safety harness. In order to use the zipline, the rider had to climb a tree to a wooden platform, hold onto the handlebar, step off the platform, and travel until the handlebar hit a stopper. The rider would then fall into the pond. The zipline area was surrounded by trees and went underneath a tree canopy.

{¶21} Walter Wolosiansky used a "lat bar" as the handlebar for the zipline. The "lat bar" consisted of a straight metal bar with angled ends pointing down. A witness recalled the angled ends of the lat bar had green-colored grips. There is a long rope attached to the zipline to allow people to pull the zipline back to its starting position.

*The Birthday Party*

{¶22} For her daughter's fourteenth birthday, Chimera asked the Wolosianskies for permission to hold a birthday party on the Premises with the intent of using the amenities on the Premises, included the zipline. The birthday party was scheduled for July 27, 2014. Chimera sent out a birthday party invitation to her daughter's friends, including Brynn Thomas. Chimera's daughter had been friends with Brynn Thomas since elementary school. No one saved a copy of the birthday party invitation, and no one could recall if the invitation stated there would be ziplining at the birthday party.

{¶23} Dawn Thomas drove her daughter, Brynn Thomas to the party. On July 27, 2014, Brynn Thomas was fifteen years old and approximately 5'2" tall. The three teenagers already at the party when Brynn Thomas arrived were Chimera's daughter, A.G., and C.V. Chimera was the only adult at the party.

{¶24} Chimera was the only adult supervising the use of the zipline. Chimera had been to the Premises multiple times, but she had never used the zipline. Chimera had been ziplining in Virginia where she was required to wear a harness. Chimera had also used the zipline at Clay's Park, which Chimera testified was similar in setup to the zipline on the Premises. The Wolosianskies did not give Chimera special instructions on how to use the zipline.

{¶25} C.V. testified that when she went to use the zipline, she had a hard time reaching the green grips of the handle because her wingspan wasn't wide enough. She tried holding the bar in the middle, but it did not feel secure to her. C.V. chose to reach and hold the green grips on the handlebar. C.V. remembered that Chimera told her to hold on tightly. C.V. stepped off the platform and landed in the pond without incident.

{¶26} Brynn Thomas watched Chimera's daughter and C.V. use the zipline prior to her attempt. Brynn testified that she observed that both Chimera's daughter and C.V. held onto the handle grips when they ziplined and they dropped into the pond without incident.

{¶27} Brynn Thomas testified that she had never ziplined before July 27, 2014. Chimera did not ask her if she had ziplined before. Brynn climbed the tree to get to the zipline platform. She did not notice any tree branches that would interfere with the line when she went down the zipline. She testified that at 5'2", she was too short to hold onto the handlebar grips on each side. She told Chimera and Chimera instructed Brynn to move her hands towards the center of bar. Brynn kept her right hand on the handle grip and moved her left hand towards the center. Brynn asked Chimera if that was going to be okay and Brynn testified that Chimera assured her it was going to be okay. She did not

ask Brynn if she was nervous, or if she was strong enough to hold onto the zipline handlebar. Then Brynn stepped off the platform. Brynn testified, "As soon as I stepped off it started wobbling and shaking and I heard a snap and I was falling." (T. 302).

{¶28} While Brynn was standing on the zipline platform, Chimera stood on the ground near the platform and used her cellphone to take a video of Brynn. The video was played for the jury as Plaintiff's Exhibit 1. The perspective of the video is from the ground looking up at Brynn on the zipline platform. In the video, Brynn is standing on the zipline platform. Her hands are raised above her head, but her hands and the zipline handlebar are obscured by leaves from the surrounding trees. Before Brynn steps off the platform, Chimera states in the video, "You're good. Whenever you're ready. Just slide on down." Someone in the background says, "Hold on tight." Chimera says, "One. Two. Three. And go." Brynn steps off the platform at the 8-second mark. Her hands and the handlebar are obscured by leaves and the placement of her hands on the handlebar is difficult to discern because of the leaves. As Brynn travels forward, Chimera says, "There you go. You got it, got it. Hold on, hold on." At the 10-second mark of the video, there is a snapping sound and Brynn is seen falling from the zipline. The rope from the zipline is between her legs. A scream is heard. Brynn falls to the ground into brush on the banks of the pond. Chimera yells, "Oh my god," and drops the phone.

{¶29} After her fall, Brynn testified she was in a lot of pain but happy she was alive. The rope from the zipline was wrapped around her left knee and she had scratches on her back. Chimera came to help her and unwrapped the rope from her knee. Brynn stayed at the party and played some volleyball. Chimera called Dawn Thomas to tell her about Brynn's fall. Brynn stayed at the party and Chimera drove Brynn and the other girls

home from the party when it started raining. When she came home from the birthday party, the Thomases did not seek medical care for Brynn.

*Pain in Left Knee and Leg*

{¶30} In the days following her fall from the zipline, Brynn experienced pain in her left knee and leg. She started her high school freshman year in August where she played JV tennis from approximately August to October. Her parents sought a medical examination for her knee pain in October 2014. She stopped playing tennis during her sophomore year due to the pain and her left knee giving out. Due to the pain in her left knee and leg, Brynn had surgery in 2015, 2016, and 2017, multiple diagnostic imaging, physical therapy, chiropractic treatment, and prescription medication. The treatment cost over $65,000. Brynn testified that as a college student, she required accommodations to get to and from classes due to her leg and knee pain. At a family trip to Disney World, she required the use of a wheelchair.

*Snapping Sound in Plaintiff's Exhibit 1*

{¶31} On direct examination, Walter Wolosiansky testified there were no branches in the corridor path of the zipline. Walter Wolosiansky also testified the snapping sound heard in Plaintiff's Exhibit 1 was caused by the handlebar hitting a branch. (T. 395, 406). In his opinion, when Brynn let go of the long lat bar with one hand, it hit a branch. (T. 407).

{¶32} The trial court overruled Chimera's objection and permitted the Thomases to present the trial video deposition of its expert, Nathan Morrill, to the jury. (T. 155). Morrill was a mechanical engineer and licensed professional engineer in the State of Utah, Florida, and Texas. The trial court held:

The opinions and observations of the witness are based upon actual video evidence and testimony provided to the witness, the testimony of Chimera, Brynn Thomas, and [C.V.] and that the jury is capable of weighing the Morrill testimony.

And his expert testimony, although I'm going to allow the testimony of his opinion of whether or not Defendant Chimera was or was not reckless in her conduct in supervising the young women at this party as it related to the zip lining, and although it's testimony that touches on a legal issue in the case, that pursuant to 704, opinion testimony, just because it embraces an ultimate issue in the case it isn't necessarily inadmissible.

An expert may assist the jury by expressing conclusions that approach those ultimate issues but the jury still has to pass on the weight and credibility of his testimony. So he can render an opinion but it's not dispositive of the issue.

(T. 153-154).

{¶33} Morrill reviewed Plaintiff's Exhibit 1. He testified that in the video, "we can clearly see the end of the bar right here (indicating). We can see her arm right about there (indicating), and we can see her other arm right here (indicating), where she has one arm reaching up to the end of the lap [sic] bar and then one arm reaching to the middle of the lap [sic] bar, while the other end of the lap [sic] bar is out free away from where her hand is." (T. 23). Morrill observed that Brynn's left hand was towards the middle of the lat bar, and her right hand was on the end of the bar at the grip. (T. 23). He testified that grabbing the bar in the middle was more unsafe because of the way Brynn grabbed the bar. (T.

24). She could not balance her weight as well. (T. 25). Morrill stated for this zipline, grabbing the bar with an uneven grip created a substantial risk of injury or harm to the rider. (T. 28). He opined that Chimera failed to give proper and safe instructions to Brynn. (T. 29).

{¶34} Morrill was next asked about the snapping sound heard in Plaintiff's Exhibit 1. Morrill testified that based on his review of the testimony and the condition of the zipline, he "believed the snap was caused by the [left-hand side of the] bar striking a branch above the zipline due to her uneven grip." (T. 28, 30, 34). Morrill said Chimera, as the operator or supervisor, had the responsibility to ensure that the pathway on the zipline was clear from obstructions and her failure to do so was reckless. (T. 31, 43).

{¶35} On cross-examination, Morrill acknowledged that Brynn fell from the lat bar. (T. 49). He was then asked:

Q. And that the reason she fell is she didn't hold on?

A. The reason she fell is she lost her grip and was not able to hold on.

Q. How did she lose her grip? * * *

A. Again, after reviewing the video, we hear a clear sound of the bar striking something. Most likely it's a branch. And with most of her weight on the one hand closest to that strike, it would be more likely than not that she would not be able to hold on and would lose her grip.

Q. Have you heard testimony from anybody other than Mr. Wolosiansky who speculated that it was a branch that the crossbar hit or the lap [sic] bar hit, that supports your contention that Brynn hit a branch on her way down?

A. Again, after reviewing the video and the condition that the pathway was

in, it's more likely than not that she did strike a branch.

(T. 49-50).

*Motions for Directed Verdict*

{¶36} At the close of the Thomases' presentation of evidence, Chimera moved for a directed verdict. (T. 367). Chimera argued there was no evidence to support a verdict against her on the issue of recklessness. In response, the Thomases acknowledged that ziplining may be considered a recreational activity. (T. 368). If it was a recreational activity, then the Chimera's duty of care would reckless conduct, which there was ample evidence of recklessness. (T. 368). The trial court overruled the motion.

{¶37} At the conclusion of Chimera's presentation of evidence, Chimera renewed her motion for directed verdict on the issue of recklessness. (T. 595). The trial court overruled the motion. (T. 596).

**Jury Instructions**

{¶38} Before charging the jury, the trial court stated on the record:

Okay, after exhaustive work in finalizing the jury instructions the Court has

made its final decisions.

And in the interest of time and getting started with the final instructions and

argument, the Court asked if counsel would agree to put their formal

objections to the jury instructions on the record after we conclude instruction

and argument.

(T. 607). Both parties agreed. (T. 607).

{¶39} The trial court charged the jury, in pertinent part:

Plaintiffs claims that the Defendant Carolyn Chimera's reckless conduct caused Plaintiff Brynn Thomas to sustain injury such that Defendant Carolyn Chimera is liable to Plaintiffs.

* * *

The Court has previously determined that Plaintiff Brynn Thomas was engaged in a recreational activity at the time of her injury. Participants in recreational activities assume the ordinary risks of the activity.

To recover for any injury the Plaintiffs must prove that the Defendant proximately caused injury to the Plaintiff Brynn Thomas by intentional or reckless conduct. Conduct that is a foreseeable customary part of the recreational or sports activity is not intentional or reckless.

* * *

Reckless conduct is an act or intentional failure to act where there is a duty to act and the facts would lead a reasonable person to realize not only that her conduct creates an unreasonable risk of physical harm to another but also that such risk is substantially greater than that which is necessary to make her conduct negligent.

(T. 618-619).

{¶40} Interrogatories were submitted to the jury. Jury Interrogatory #1 asked: "Do you find by a preponderance of the evidence that Defendant Carolyn Chimera was reckless?" Jury Interrogatory #2 asked: "Do you find by a preponderance of the evidence that the recklessness of Defendant Carolyn Chimera proximately caused injury to Plaintiff Brynn Thomas?" Jury Interrogatories #3 and #4 regarded compensatory damages. Jury

Interrogatory #5 asked: "Do you find by a preponderance of the evidence that the recklessness of Defendant Carolyn Chimera proximately caused injury to Plaintiff Brynn Thomas that resulted in permanent and substantial physical deformity?"

{¶41} After closing arguments, the trial court heard the parties' objections to the jury instructions:

> MR. FOWLER: Attorney Scott Fowler on behalf of Defendant Chimera. We again renew her objection to the jury instruction regarding permanent and substantial physical deformity as instructed by the Court. Defendant has no other objections to the Court's charge. * * * and also the submission of the interrogatories regarding that same issue.
>
> * * *
>
> MR. TSANGEOS: * * * As it relates to the instruction that we proposed on invitee, social  guest, and also we asked for an  instruction relating to children, who are entitled to a higher degree of care.
>
> We do acknowledge the fact that Brynn was engaging in recreational activity and that there is a defense of primary assumption of risk.
>
> However, we feel that given the specific set of facts in this case, now there were three girls who zip lines, two of them did it without incident, Brynn was not that fortunate. Something different happened to Brynn and the facts of this case will show that she was given specific instructions by the Defendant. So we would submit that the analysis in this case hinges on what standard of care Brynn had a right to expect from Mrs. Chimeras, and that takes us out of the reckless standard. So we would submit that there

should have been further instruction, if nothing else on the invitee, social guest and possibly ordinary care.

THE COURT: Do you wish to respond?

MR. FOWLER: Nothing, no, not on the record, Your Honor. I've already said my peace.

THE COURT: Okay. And Mr. Fowler had submitted I believe it was?

MR. FOWLER: *Gentry v. Craycraft*.

THE COURT: Yes, Ohio Supreme Court decision number one and I believe that's the one that stood for the proposition that primary assumption of risk in the recreational activity realm of the law, that the age of the participant is irrelevant. And while – before I received that case I was probably inclined to give that instruction. I think that case was instructive and informed the Court that the correct instruction of law would be not to include that.

* * * The Court, we spent about an hour this morning revisiting all that and really sorting through the standard for liability in recreational activity areas. And it was clear to the Court, even our own Fifth District in the *Quarry* case and the Supreme Court cases, this is an odd area of the law. But the Court is satisfied on review of all the case law that the duty of care and the standard here is one of reckless conduct in the face of a recreational activity.

(T. 722-727).

**Verdict**

{¶42} The jury returned its verdict on September 1, 2022. The jury answered Jury Interrogatory #1, which asked if the jury found by a preponderance of the evidence that the Chimera was reckless, in the negative and was signed by six out of the eight jurors. The general verdict form in favor of Chimera was signed by six out of the eight jurors.

{¶43} The trial court memorialized the jury's verdict via judgment entry filed on September 2, 2022.

{¶44} It is from this judgment entry that the Thomases and Chimera now appeal.

**ASSIGNMENTS OF ERROR**

{¶45} The Thomases raise two Assignments of Error:

I. THE TRIAL COURT ERRED WHEN IT FOUND THAT "RECKLESS CONDUCT" WAS THE ONLY STANDARD OF CARE APPLICABLE TO APPELLEE/CROSS-APPELLANT'S CONDUCT AND REFUSED TO ALSO INSTRUCT THE JURY ON APPELLEE-CROSS/APPELLANT'S [SIC] DUTY OF ORDINARY CARE AS A SOCIAL HOST OF AN INVITEE.

II. THE TRIAL COURT ERRED WHEN IT REFUSED TO INSTRUCT THE JURY THAT CHILDREN ARE ENTITLED TO A HIGHER DEGREE OF CARE.

{¶46} Chimera raises two Cross-Assignments of Error:

I. THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING PLAINTIFFS' MECHANICAL ENGINEER TO OPINE THAT CAROLYN CHIMERA WAS RECKLESS AS HIS OPINIONS IMPROPERLY INVADED THE PROVINCE OF THE JURY.

II. THE TRIAL COURT ERRED IN SUBMITTING THE ISSUE OF BRYNN THOMAS'S INJURY AS A PERMANENT AND SUBSTANTIAL PHYSICAL DEFORMITY TO THE JURY.

**ANALYSIS**

**I. and II. JURY INSTRUCTIONS**

{¶47} In their first and second Assignments of Error, the Thomases contend the trial court erred when it refused to instruct the jury as to their proposed jury instructions on the duty of care. We disagree.

**Standard of Review**

{¶48} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Westfall v. Aultman Hosp.*, 5th Dist. No. 2015CA00223, 2017-Ohio-1250, 87 N.E.3d 735, ¶ 104 citing *Pettit v. Hughes*, 177 Ohio App.3d 344, 2008-Ohio-3780, 894 N.E.2d 738 (5th Dist.). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991); *see State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, 24 N.E.3d 1147, ¶ 5. An appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989)." *State v. Womack*, 5th Dist. Stark No. 2020CA00096, 2021-Ohio-1309, 2021

WL 1424199, ¶ 47 citing *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, 2015 WL 5728458, ¶ 240. Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

{¶49} Whether the jury instructions correctly state the law is a question of law, which we review de novo. *Westfield Ins. Group v. Silco Fire & Sec.*, 5th Dist. Stark No. 2018CA00122, 2019-Ohio-2779, 2019 WL 2775601, ¶ 60 citing *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).

**Standard of Care for a Recreational Activity**

{¶50} The Thomases agree that Brynn Thomas was engaged in a recreational activity of ziplining at the time of her accident. On January 29, 2021, the trial court granted summary judgment in favor of the Wolosianskies, finding as a matter of law that Brynn Thomas was engaged in the recreational activity of ziplining on July 27, 2014. The trial court included Civ.R. 54(B) language in its judgment entry, which both the Thomases and the Wolosianskies utilized to appeal the judgment. The Thomases, however, did not assign as error the trial court's finding that Brynn Thomas was engaged in a recreational activity when she was injured.

{¶51} In order to establish a cause of action for negligence, a plaintiff must demonstrate (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by the defendant's breach of duty. *Simmons v. Quarry Golf Club, L.L.C.*, 2016-Ohio-525, 60 N.E.3d 454, ¶ 19 (5th Dist.) citing *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

{¶52} In this case where there is no dispute that the plaintiff was engaged in a recreational activity, Ohio case law has established the duty of care owed to the plaintiff. Three standards are used to permit recovery for injuries received during sports and recreation activities: (1) intentional tort; (2) willful or reckless misconduct, and (3) negligence. *Campagna-McGuffin v. Diva Gymnastics Academy, Inc.*, 2022-Ohio-3885, 199 N.E.3d 1034, ¶ 32 (5th Dist.) citing *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990). When a defendant shows the plaintiff assumed the risk of injury through participating in an inherently dangerous activity, the duty of care is eliminated. *Id.* at ¶ 33 citing *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 659 N.E.2d 1232 (1996).

{¶53} It is well-settled that Ohio law recognizes three separate types of the defense of assumption of the risk: express, primary, and implied. *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116 (2004). Each of these types of assumption of risk provides an independent defense to a negligence claim. *Id.* In this case, the Thomases agreed that Brynn Thomas was engaged in a recreational activity. They also agreed that there is the defense of the primary assumption of the risk. "We do acknowledge the fact that Brynn was engaging in recreational activity and that there is a defense of primary assumption of risk." (T. 724). The Thomases also included "assumption of the risk" in their proposed jury instructions filed on August 22, 2022.

*Primary Assumption of the Risk*

{¶54} Primary assumption of the risk is a defense of extraordinary strength because it essentially means "that no duty was owed by the defendant to protect the plaintiff from that specific risk," so a "court must proceed with caution when contemplating

whether primary assumption of the risk completely bars a plaintiff's recovery." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 659 N.E.2d 1232 (1996). A successful primary assumption of the risk defense means that the duty element of negligence is not established as a matter of law. *Id.* Thus, the defense prevents the plaintiff from making a prima facie case of negligence. *Id.* The applicability of the primary-assumption-of-the-risk defense presents an issue of law for the court to decide. *Id.*

{¶55} "When individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either reckless or intentional." *Marchetti v. Kalish*, 53 Ohio St.3d 95, 559 N.E.2d 699 (1990).

{¶56} The primary assumption of risk doctrine defense relieves a recreation provider from any duty to eliminate the risks that are inherent in the activity, because such risks cannot be eliminated. *Simmons v. Quarry Golf Club*, 2016-Ohio-525, 60 N.E.3d 454, ¶ 20 (5th Dist.). "The types of risks associated with [an] activity are those that are foreseeable and customary risks of the * * * recreational activity." *Pope v. Willey*, 12th Dist. Clermont No. CA2004-10-077, 2005-Ohio-4744, 2005 WL 2179317.

{¶57} The test for applying the doctrine of primary assumption of the risk to recreational activities and sporting events requires: (1) the danger is ordinary to the game; (2) it is common knowledge the danger exists; and (3) the injury occurs as a result of the danger during the course of the game. *Simmons v. Quarry Golf Club*, 2016-Ohio-525, ¶ 21. "The nature of the sporting activity is highly relevant in defining the duty of care owed by a particular defendant: what constitutes an unreasonable risk, under the circumstances, of a sporting event must be delineated with reference to the way the

particular game is played, i.e., the rules and customs that shape the participant's idea of foreseeable conduct in the course of the game." *Harting v. Dayton Dragons Professional Baseball Club, LLC*, 171 Ohio App.3d 319, 2007-Ohio-2100, 870 N.E.2d 766 (2nd Dist.), quoting *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705 (1990).

{¶58} While the Thomases stated to the trial court that they agreed primary assumption of the risk was an applicable defense in the context of a recreational activity and included "assumption of the risk" in their proposed jury instructions, on appeal the Thomases contend primary assumption of the risk was not applicable. They argue that primary assumption of risk was inapplicable in this case because the risk of harm was not foreseeable, associated with the activity, or could have been eliminated by the tortfeasor. As such, the Thomases contend the trial court erred when it did not include the standard of ordinary care for an invitee or social guest, as included in their proposed jury instructions.

{¶59} The Thomases contend that based on our decision in *Simmons v. Quarry Golf Club, LLC*, 2016-Ohio-525, 60 N.E.3d 454 (5th Dist.), the trial court erred in finding primary assumption of the risk was applicable to the factual circumstances of this case. In *Simmons*, a golfer went into the rough to look for a stray golf ball. After he found the ball, the golfer was returning to the golf cart when he stepped into an uncovered drain, causing injuries. On summary judgment, the trial court found there was no genuine issue of material fact that the golfer primarily assumed the risk by searching for the golf ball which was buried in the grass in an area unmaintained by the golf course because searching for a golf ball in the rough is inherent to the game. *Id.* at ¶ 22. We reversed the trial court's determination and held there was a genuine issue of material fact that falling

into a large, uncovered drain hole is not one of the foreseeable or inherent risks of the game of golf, nor is it a danger ordinary to or which commonly exists in the game of golf. *Id.* at ¶ 22. We noted that when walking into a natural rough area to search for a stray ball, a golfer could foresee a rabbit hole in a natural area of the golf course, but a golfer could not foresee an uncovered drain. *Id.*

{¶60} We do not find *Quarry* necessitates a reversal of the trial court's decision as to the jury instructions. In *Quarry*, the golfer was injured when he went into the rough and fell into an uncovered drain. We found there was a genuine issue of material fact whether the danger the golfer faced was a foreseeable part of the recreational activity. In this case, the Thomases argue in their appellate brief that it is settled fact as to how Brynn fell from the zipline; however, a review of the evidence shows there was conflicting testimony as to how she fell. The Thomases' argument in this case was that Brynn Thomas fell from the zipline because Chimera improperly instructed her to hold the handlebar with one hand on the end and the other hand in the middle. Based on the imbalance of Brynn's hand placement, the handlebar struck an obstructing tree branch that Chimera recklessly failed to discover prior to Brynn leaving the zipline platform, causing Brynn to lose her grip and fall from the zipline. Brynn testified that she felt the bar wobble, she heard a snap, and she fell. Only two witnesses, who were not present for the accident, testified that Brynn hit a branch based on their interpretation of the snapping sound in Plaintiff's Exhibit 1. Nathan Morrill, the Thomases' expert, opined that Chimera did not have the necessary knowledge or training to supervise Brynn for the zipline and Chimera was reckless in failing to inspect the corridor path of the zipline before instructing

Brynn to slide down. (T. 42-43). Walter Wolosiansky testified the snapping sound heard in Plaintiff's Exhibit 1 was the sound of the lat bar hitting a branch.

{¶61} The parties did not submit an interrogatory to the jury asking how Brynn fell from the zipline. The underlying purpose of jury interrogatories is to "test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial." *State Farm Mut. Auto. Ins. Co. v. Williams*, 5th Dist. Licking No. 13-CA-04, 2013-Ohio-3884, 2013 WL 4806467, ¶ 24 quoting *Winegar v. Creekside Crossing Homes Sales*, 5th Dist. Coshocton No. 08CA001, 2008–Ohio5835, ¶ 27 citing *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.*, 28 Ohio St.3d 333, 337, 504 N.E.2d 415 (1986). The jury in this case only found that Chimera was not reckless, as tested by Jury Interrogatory #1. We disagree with the Thomases that the matter is settled as to how Brynn fell from the zipline.

{¶62} We reversed *Quarry* because we found the issue of foreseeability and inherent risk of golf as to stepping into an uncovered drain in the rough was a matter for a jury's consideration. Unlike the plaintiff in *Quarry*, the Thomases presented their case to a jury on the primary assumption of the risk regarding the foreseeability of the risks of ziplining and the inherent risks of ziplining, which included whether Brynn fell because she hit a tree branch while ziplining based on her hand placement. The jury considered Chimera's alleged recklessness as to (1) her instruction and supervision of Brynn and (2) her inspection of the ziplining course. When considering the jury instructions as a whole and in comparison to our decision in *Quarry*, we do not find the trial court's jury charge mislead the jury in a matter materially affecting the Thomases' substantial rights

*Social Host*

{¶63} In lieu of using the jury instruction for primary assumption of the risk and reckless conduct, the Thomases contend the trial court should have permitted a jury instruction as to the duty of care for a social host and their guest.

{¶64} "In Ohio, the status of the person who enters upon the land of another * * * continues to define the scope of the legal duty that the landowner owes the entrant." *Walworth v. Khoury*, 8th Dist. Cuyahoga No. 109898, 2021-Ohio-3458, ¶ 19 quoting *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996). Common law traditionally recognized three types of entrants: (1) trespasser; (2) licensee; and (3) invitee. *Id.* A fourth type of entrant labeled the "social guest" emerged in *Scheibel v. Lipton*, 156 Ohio St. 308, 102 N.E.2d 453 (1951). To be classified as a social guest, there must be evidence that the host extended to the entrant "an actual invitation, express or implied * * * for the specific visit." *Walworth*, 2021-Ohio-3458, ¶ 20 quoting *Estill v. Waltz*, 10th Dist. Franklin No. 02AP-83, 2002-Ohio-5004, ¶ 32. "A social guest is someone the owner or occupier of land invites onto the property for the purpose of social interaction." *McFadden v. Discerni*, 2023-Ohio-1086, -- N.E.3d --, ¶ 22 (11th Dist.) quoting *Gaffney v. Soukup*, 11th Dist. Geauga No. 2016-G-0104, 2017-Ohio-7362, ¶ 12.

{¶65} "A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider

dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." *McFadden v. Discerni*, 2023-Ohio-1086, ¶ 23 quoting *Sorensen v. DeFranco*, 11th Dist., 2013-Ohio-5829, 6 N.E.3d 664 at ¶ 40, citing *Scheibel v. Lipton*, 156 Ohio St. 308, 102 N.E.2d 453 (1951), at paragraph three of the syllabus.

{¶66} A review of the record and procedural history of this case shows that this case concerned recreational activity and the relevant case law thereto. The Thomases did not challenge the trial court's determination that Brynn was engaged in a recreational activity during the first appeal of this case. While the Thomases proposed the jury instruction for social host, the Thomases agreed with the trial court during its objection to the jury instructions that Brynn was engaged in a recreational activity at the time of the accident. Further, the Thomases have not assigned the trial court's June 24, 2022 finding on summary judgment as to premises liability an error on appeal. In the June 24, 2022 judgment entry denying Chimera's motion for summary judgment, the trial court found as a matter of law that negligence based on premises liability was barred as law of the case and the case would proceed on the issue of "whether Chimera's *conduct* in providing Brynn Thomas with encouragement with respect to the zipline and placement of her hands after Brynn Thomas informed her that she was too short to use the zipline was reckless." (Emphasis sic). (Judgment Entry, June 24, 2022). Because a social host jury instruction contemplates premises liability, we find no error for the trial court to deny the Thomases' proposed jury instruction as being inapplicable to the case.

{¶67} The Thomases' first Assignment of Error is overruled.

**Higher Standard of Care for Minors**

{¶68} In their second Assignment of Error, the Thomases contend the trial court erred when it did not instruct the jury's on the Thomases' proposed jury instruction that children were owed a higher standard of care.

{¶69} In *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116, syllabus, the Ohio Supreme Court held:

> In a personal injury action brought for injuries sustained while an individual
>
> is a participant in or a spectator at a sport or recreational activity, the age of
>
> the participant or spectator and whether he or she was capable of
>
> appreciating the inherent risks is immaterial. Instead, recovery is dependent
>
> upon whether the defendant's conduct was either reckless or intentional.
>
> (*Marchetti v. Kalish* [1990], 53 Ohio St.3d 95, 559 N.E.2d 699; and
>
> *Thompson v. McNeill* [1990], 53 Ohio St.3d 102, 559 N.E.2d 705, followed
>
> and explained.)

{¶70} In support of their argument that the trial court erred as to its failure to include their proposed instruction, the Thomases cite case law issued prior to the Ohio Supreme Court's decision in 2004. Based on our determination as to recreational activity and the relevant standard of care in the first Assignment of Error, we find the trial court utilized the correct statement of the law as to the standard of care afforded to minors participating in a recreational activity.

{¶71} The Thomases' second Assignment of Error is overruled.

**I. and II. CROSS-APPEAL**

{¶72} Given our disposition of the Thomases' two Assignments of Error, Chimera's two Cross-Assignments of Error are rendered moot.

**CONCLUSION**

{¶73} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, John, J., concur.