[Cite as *Walworth v. Khoury*, 2021-Ohio-3458.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOHN WALWORTH,                           :

    Plaintiff-Appellant,          :

                                      No. 109898

    v.                            :

JUDY KHOURY,                             :

    Defendant-Appellee.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 30, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-923596

---

### *Appearances:*

Chamberlain Law Firm, L.P.A., and Henry W. Chamberlain, *for appellant.*

White, Getgey & Meyer Co., L.P.A., and C. Joseph McCullough, *for appellee.*

LISA B. FORBES, J.:

{¶ 1} John Walworth ("Walworth") appeals from the trial court's journal entry granting summary judgment in favor of Judy Khoury ("Khoury") in this personal injury case. After reviewing the facts of the case and pertinent law, we affirm the lower court's judgment.

## I.    Facts and Procedural History

{¶ 2}    On February 27, 2018, Walworth was carrying a box into Khoury's basement when he tripped over a pair of shoes that Khoury left at the top of the basement steps ("the Incident").   Walworth fell down the stairs and suffered multiple injuries requiring three corrective surgeries.  Walworth and Khoury were engaged at the time of the incident and got married in May 2019.  On October 21, 2019, Walworth filed a complaint against Khoury alleging negligence.  On August 18, 2020, the court granted Khoury's summary judgment motion, making the following findings:

> By [Walworth's] own admission, but for his vision obscured by the box he was carrying, he would have seen the shoes.  The shoes were not latent or concealed, but were out in the open and easy to see.  Therefore, the shoes were open and obvious and [Khoury] had no duty to warn or protect plaintiff from the condition of shoes placed at the top of the basement steps.  Additionally, [Walworth] carrying a box does not create an attendant circumstance, nor were there any circumstances outside of [Walworth's] control that limited his ability to see the shoes.

{¶ 3}    It is from this order that Walworth appeals.

## II.    Civ.R. 56(C) Evidence

### A.    Walworth's Deposition Testimony

{¶ 4}    To support her summary judgment motion, Khoury attached Walworth's deposition testimony and one photograph taken by Walworth of a recreation of the approximate location of Khoury's shoes at the time of the Incident. Walworth testified that he and Khoury met in 2000 or 2001, started dating in 2015, and got married in May 2019.  At the time of the deposition (March 2020), Walworth

and Khoury lived together at Khoury's house at 3299 W. 157th Street. This is where the Incident took place.

**{¶ 5}** On February 27, 2018, Walworth went to Khoury's house after he finished working. Khoury asked Walworth to take four one-gallon containers of vinegar in a sealed box from the back of her car to her basement. Walworth testified that, "I did that. In the process of carrying that box, I stepped, my left foot stepped on her shoes. My right foot caught a tread on the stairs and that's when I went down."

**{¶ 6}** Walworth testified that he had been to Khoury's house more than a hundred times in the three years they dated leading up to the Incident. He entered the house through this same back door "every single time." Asked how many times he had been in Khoury's basement prior to the incident, Walworth answered, "Dozens, if not up to a hundred. * * * Because that's where I would put my shoes." According to Walworth, taking one's shoes off inside Khoury's home was "one of the house rules."

**{¶ 7}** The following colloquy took place during Walworth's deposition:

Q: * * * you have the box in your hands, you go to walk down the steps —

A: Uh-huh.

Q: — and your left foot steps on one of those shoes, is that your understanding?

A: At least one of them.

Q: You don't know where you stepped on that shoe —

A: No.

Q: — specifically?

A: No.

Q: Somehow your left foot hit that shoe —

A: I know. I felt it.

Q: — one of the shoes?

A: I stepped on it, yes.

* * *

Q: When your left foot stepped on one or both of those shoes, that caused you to lose your balance?

A: It did.

Q: And I think you said your right foot then went where?

A: I caught my right foot, and I'm pointing to the top tread or first tread, my right foot caught on the edge of the tread.

* * *

Q: All right. I assume both of your hands were on the box?

A: That's correct.

Q: You weren't using a handrail on this particular day?

A: No.

Q: Do you remember how you were carrying the box, can you describe that?

A: Just both arms in what I would describe as a cradle fashion.

Q: Were your arms around the box or under the box?

A: Underneath.

Q: Both were under?

A: Underneath?

Q: Why did your left foot step on the shoes?

A: I don't, I don't know.

Q: Did you not see them?

A: I did not see the shoes.

Q: Did you look?

A: I was carrying a box. Shoes had never been there before. I presumed, if anything, that there was nothing in my path.

Q: Okay. So you just didn't expect there to be shoes there on that particular day?

A: No.

Q: And because you did not have an expectation that there would be shoes there, you didn't look down there, right?

A: I did not look down there.

Q: Was there anything preventing you from looking down?

A: Carrying the box.

Q: Anything else?

A: No.

Q: Had you looked there, would you have been able to see the shoes?

A: I don't know if — I was carrying the box. If I had turned my head to the left, yes, I would have seen it.

Q: And had you seen them you would have avoided stepping on them, right?

A: Yes.

Q: What color are they?

A: They are black and gray.

Q: In the pictures that we've now marked as Exhibits B through F, they're fairly noticeable in these pictures, do you agree?

* * *

A: They are noticeable in the photographs.

Q: Is there anything different about February 27, 2018 that would have made them less noticeable?

* * *

A: Well, I was carrying a box.

Q: Right.

A: And I did not know they were there so I didn't look for shoes.

Q: You had a general assumption they just wouldn't be there, right?

A: Yes.

## B. Walworth's Affidavit and Photographs

**{¶ 8}** The gist to Walworth's opposition to summary judgment appears to be that Khoury "told the truth and admitted liability in this case." Specifically, Walworth argued that "the attendant circumstances surrounding [his] fall prohibit summary judgment and indeed [Khoury's] negligence should be an issue for a jury to consider. In fact, [Khoury] admits she was negligent in leaving her shoes at that location and that she failed to warn or protect [Walworth] from that hazard."

**{¶ 9}** To support his position, Walworth attached his affidavit to his brief in opposition of summary judgment. Pertinent parts of this affidavit state as follows:

6. The box Affiant carried, as described in my deposition, contained four (4) one gallon bottles of vinegar.

7. In order to take the box from the car to the basement, Affiant went up the outside steps of the back deck, turned right onto the landing.

The storm door opens outward. The rear door to the residence opens inward, which would partially block my view of the shoes on the landing. The location of the shoes in the attached photographs is my best estimate as to where they had to be located on the landing at the time of my fall.

8. Although Affiant has been through this rear entrance door many times, Affiant has never encountered any shoes or trip hazards on the landing at any point in time until February 2018.

{¶ 10} Along with his affidavit, Walworth submitted five photographs that he took of the rear entry, landing, and stairs to the basement of Khoury's house. According to his affidavit, these photographs "truly and accurately represent the condition of the rear entrance" at the time of the Incident, although the pictures were taken at a later time. Khoury's shoes are in two of the photos, placed near the baseboard on the left side of the landing to the stairwell going down to the basement. Walworth's affidavit states: "The location of the shoes in the attached photographs is my best estimate as to where they had to be located on the landing at the time of my fall."

## C. Khoury's Deposition Testimony

{¶ 11} The last of the Civ.R. 56(C) evidence that Walworth submitted to the trial court was Khoury's deposition testimony. Khoury testified that she and Walworth were married on May 19, 2019, and Walworth moved in with her after they got married. At the time of the Incident, Khoury and Walworth were engaged to be married. For approximately four years prior to the Incident, Walworth was at Khoury's house "maybe twice a week." He had a key. Khoury testified that Walworth was familiar with the rear door, landing, and stairway to the basement of her home.

Khoury also testified that she has a rule in her home that people take their shoes off before they enter.

{¶ 12} Khoury testified that a representative from her homeowner's insurance company took pictures of the scene of the accident seven months after the Incident, on September 28, 2018, via the viewpoint of "walking in my back door looking at it from the landing down to the basement." Additionally, the weekend prior to Khoury's deposition, which was held on March 9, 2020, Walworth took pictures of the same area in Khoury's house. Some of the pictures include Khoury's shoes, which Walworth "put them where he thought they were" at the time of the Incident. Khoury testified, however, that Walworth was not sure if the shoes were on the landing or on the first step going down to the basement. "But if you're asking me if it was here or here, I don't know the answer to that, but that would be the approximate location, yes. * * * But where they were that day I can't tell you. I don't know."

{¶ 13} The following exchange took place at Khoury's deposition:

Q: [D]id you ever admit liability to [your insurance company] when they were asking you about this case?

A: I don't think they ever asked me so I will say no.

Q: Okay. Did you ever give them, even if they didn't ask you, did you ever give them your opinion that, hey, this my fault, I left shoes in a precarious position on the landing or on the step that caused [Walworth] to fall and I'm not contesting liability?

* * *

A: No.

Q: You never gave that opinion?

A: No.

Q: All right. Well, I'm going to ask you right now. Do you feel as you sit here today that John's injuries on February 27, 2018 were your fault?

* * *

A: Yes.

Q: Okay. And we're going to talk more about that, but is it fair to say that you believed that the injuries are your fault because you left a pair of your shoes in a precarious and dangerous position at the top of the basement steps * * * is that fair?

A: Yes.

**{¶ 14}** Asked to clarify, Khoury testified as follows:

The thing is * * * that if the shoes caused him to fall, then, you know, I don't have any firsthand knowledge that the shoes caused him to fall. * * * I didn't see what caused him to fall. I did see him go flying down the steps, yeah. * * * John was carrying a box of vinegar down the stairs. The next thing I know he's flying down the steps with box of vinegar in hand.

**{¶ 15}** Asked if she "didn't actually see if [Walworth] tripped on anything," Khoury replied, "Correct." Khoury further testified that her "shoes were there to be stepped on prior to [Walworth's] fall," but her "admission" that she feels "at fault for his injuries on that day is based upon the assumption that [he] is telling the truth that he stepped on [her] shoes * * *." According to Khoury, her shoes "were to the left of the stairs * * * as you look at the staircase going down * * *."

**{¶ 16}** According to Khoury, Walworth typically takes his shoes off and puts them in the basement when he enters Khoury's home. Khoury, on the other hand,

testified that "I usually put [my shoes] to the right of the landing" to the basement steps. She further testified that she did not know why she put her shoes to the left of the landing on the day of the Incident, and it did not occur to her to "warn" Walworth that her shoes were there when he came in the back door. Asked if Walworth ever saw Khoury's "shoes on that landing by the edge of the steps" before he fell, Khoury answered, "I don't know."

## III. Law

### A. Summary Judgment Standard of Review

{¶ 17} Appellate review of a decision granting summary judgment is de novo. *Barley v. Fitcheard*, 8th Dist. Cuyahoga No. 91458, 2008-Ohio-6159, ¶ 12. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact; (2) they are entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

### B. Negligence and Premises Liability

{¶ 18} "It is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

{¶ 19} "In Ohio, the status of the person who enters upon the land of another * * * continues to define the scope of the legal duty that the landowner owes the

entrant." *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996). Traditionally, common law recognized three classifications of entrants: 1) trespasser; 2) licensee; and 3) invitee. *Id.*

{¶ 20} A fourth classification of social guest emerged in *Scheibel v. Lipton*, 156 Ohio St. 308, 102 N.E.2d 453 (1951). To be classified as a social guest, there must be evidence that the host extended to the entrant "an actual invitation, express or implied * * * for the specific visit." *Estill v. Waltz*, 10th Dist. Franklin No. 02AP-83, 2002-Ohio-5004, ¶ 32. The duty that a host owes a social guest is twofold:

> (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition.

*Scheibel* at syllabus. It is undisputed that Walworth was a social guest in the case at hand.

{¶ 21} Regardless of the classification of the entrant, "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5. "When applicable, * * * the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Id.* "The rationale behind the doctrine is that the open and obvious nature of the hazard itself serves as a warning." *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

{¶ 22} To invoke this doctrine, a defendant must show that there is "a dangerous condition which is so obvious and apparent that a [guest] should reasonably be expected to discover it and protect himself against it. * * * Invitees then have a corresponding duty to take reasonable precautions to avoid dangers that are patent or obvious." *Earnsberger v. Griffiths Park Swim Club*, 9th Dist. Summit No. 20882, 2002-Ohio-3739, ¶ 14. Furthermore, this court has held that "the open and obvious danger does not actually have to be observed by the plaintiff in order for it to be an open and obvious condition under the law. * * * The determinative issue is whether the condition was observable." *Bonner v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 96924, 2012-Ohio-86, ¶ 27.

## IV. Analysis

{¶ 23} In Walworth's sole assignment of error, he argues that the "trial court erred in finding [Khoury's] shoes left at the top of the stairs were an open and obvious danger, relieving [Khoury] of any duty to warn or protect [Walworth] from this hazard." The parties do not dispute that Walworth was a social guest in Khoury's home at the time of the Incident, thus, they do not dispute the scope of the duty owed. Furthermore, the parties do not dispute that Walworth was injured as a result of his fall. The only issue being challenged in this appeal is whether the court erred by determining that Khoury's shoes were an open and obvious condition that was "observable" to Walworth as he walked through the rear door on his way to the basement.

{¶ 24} Walworth testified that he did not see the shoes prior to his fall. Importantly, Walworth further testified that he did not expect shoes to be there so he "did not look down there." Asked if anything prevented him from looking, Walworth answered, "Carrying the box." Asked if anything else prevented him from looking, Walworth stated, "No." Asked if he had looked, would he have seen the shoes, Walworth answered, "If I had turned my head to the left, yes, I would have seen it." This testimony was undisputed.

{¶ 25} The pictures Walworth submitted as evidence showed Khoury's shoes in plain view on the left side of the landing of the steps down to the basement. Additionally, Walworth testified that the shoes were "noticeable in the photographs."

{¶ 26} This court has previously held that, in determining whether the open and obvious doctrine applies, the "issue is whether the conditions that did exist were open and obvious to any person exercising reasonable care and watching where she was going." *Orens v. Ricardo's Restaurant*, 8th Dist. Cuyahoga No. 70403, 1996 Ohio App. LEXIS 4944 (Nov. 14, 1996). In other words, when applying the open and obvious doctrine, courts use "an objectively-reasonable-person standard of what the plaintiff should have known * * *." *Bumgardner v. Wal-Mart Stores*, 2d Dist. Miami No. 2002-CA-11, 2002-Ohio-6856, ¶ 18.

{¶ 27} Furthermore, Ohio courts have held that a "hazard is considered to be open and obvious when it is in plain view and readily discoverable upon ordinary inspection." *Miller v. First Internatl. Fid. & Trust Bldg. Ltd.*, 6th Dist. Lucas No. L-

08-1187, 2009-Ohio-6677, ¶ 68. In *Miller*, the plaintiff's pant leg caught onto a "metal assembly" that was attached to an exposed pipe as she was taking the trash out at work. *Id.* at ¶ 10-14. This caused her to fall and injure her knee. *Id.* at ¶ 14. Although the plaintiff "made that trip hundreds of times during her employment," the court held that "it was reasonable to expect that [she] would take appropriate measures to protect herself, particularly when she had bags in her hands and could not see the ground well." *Id.* at ¶ 13, 69.

{¶ 28} This court has repeatedly held that the open and obvious doctrine may be defeated if "attendant circumstances" existed. *See, e.g., Humble v. Boneyard Westlake, L.L.C.,* 8th Dist. Cuyahoga No. 104348, 2016-Ohio-8149, ¶ 8.

> Attendant circumstances are typically distractions that would draw a person's attention away from the open and obvious danger, thus reducing the degree of ordinary care that person may exercise at the time. *See Johnson v. Regal Cinemas, Inc.*, 8th Dist. Cuyahoga No. 93775, 2010-Ohio-1761. "'Attendant circumstances' refers to all facts relating to the event, such as time, place, surroundings or background and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event." *Klauss v. Marc Glassman, Inc.,* 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306, ¶ 20.
>
> Ohio courts have held that "a plaintiff who claims attendant circumstances must be able to point out differences between ordinarily encountered conditions and the situation that actually confronted the plaintiff. The breadth of the attendant circumstances exception does not encompass the common or the ordinary." *Cooper v. Meijer Stores L.P.*, 10th Dist. Franklin No. 07AP201, 2007-Ohio-6086, ¶ 17.

*Id.* at ¶ 8-9.

{¶ 29} Upon review, we find that Khoury presented evidentiary materials on summary judgment showing that a reasonable person would consider her shoes to be an open and obvious condition at the time of the Incident. At this stage of the

proceedings, the burden shifted to Walworth to demonstrate a genuine issue of material fact as to whether attendant circumstances defeated the open and obvious danger of the shoes. We find that Walworth failed to present evidence that attendant circumstances excused his failure to observe Khoury's shoes, which were in plain view had Walworth looked.

{¶ 30} On appeal, Walworth argues that the following "challenges" prevented him from seeing Khoury's shoes:

1. He was carrying a box;

2. The rear door to the residence opens inward, which would partially block his view of the shoes on the landing;

3. He has to turn immediately to his right as he enters through the door onto the landing;

4. The landing is extremely short/small and provides little opportunity for him to see and perceive shoes in time to avoid contact with them; and,

5. Despite the many times he has gone through that door, he has never seen shoes left on the landing or the steps.

{¶ 31} Attendant circumstances are distractions that divert attention away from the ordinary care a plaintiff would exercise at the time. *Klauss,* 8th Dist. Cuyahoga No. 84799, 2005-Ohio-1306, at ¶ 20. "'[A]ttendant circumstances' refers to all facts relating to the event, such as the time, place, surroundings or background and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event." *Id.* Attendant circumstances are "beyond the control of the injured party [and] do not include regularly encountered, ordinary, or

common circumstances." *Johnson v. Southview Hosp.*, 2d Dist. Montgomery No. 25049, 2012-Ohio-4974, ¶ 17.

{¶ 32} In *Johnson*, the plaintiff argued that the following conditions were attendant circumstances that serve to negate the open and obvious exception to liability:

> the cafeteria employee's offer of help as Johnson attempted to cross the threshold to the cafeteria, the personal items she was holding, the partially open gate, and the absence of signs that the cafeteria was closed. The trial court rejected these arguments. In her brief on appeal, Johnson sets forth additional attendant circumstances: the absence of signs indicating that the doorway was an exit or that patrons should watch their step. She also repeatedly asserts that the track was not supposed to be down unless the cafeteria was closed.

*Id.* at ¶ 18.

{¶ 33} The trial court found, and the appellate court affirmed, that the plaintiff "failed to establish that attendant circumstances existed at the time of her fall." *Id.* at ¶ 19. Particularly applicable to the case at hand, the court found that "carrying a purse or planner * * * constitute 'regularly encountered, ordinary, or common circumstances.'" *Id.*

{¶ 34} Applying this guidance to the instant case, we address Walworth's arguments. First, Walworth carrying a box while walking was within his control. *See Backus v. Giant Eagle*, 115 Ohio App.3d 155, 158, 684 N.E.2d 1273 (7th Dist.1996) (when a plaintiff "exercises the option to read advertisements rather than to look at the surface upon which he or she is traveling, then he or she abandons the duty imposed to look").

{¶ 35} Second, the fact that the rear door to Khoury's house opened inward, rather than outward, was not an attendant circumstance in this case, because it was regularly encountered, as Walworth had been through this doorway hundreds of times prior to the Incident. Furthermore, Khoury's shoes are shown in two of the pictures that Walworth attached to his affidavit. The rear door is open in both pictures, and it does not block the visibility of the shoes.

{¶ 36} Third, the layout of the entrance, and fourth, the size of the landing, are not "distractions" that would divert one from paying attention; rather, the entrance was anticipated, customary, and usual. *See, e.g., Guthrie v. Giant Eagle, Inc.,* 7th Dist. Mahoning No. 20 MA 0091, 2021-Ohio-1268, ¶ 58 (holding that a stop sign in a parking lot was not an attendant circumstance, because "[e]ncountering a stop sign where vehicular traffic would approach a pedestrian egress and crossing is not unusual, unexpected, or surprising").

{¶ 37} Fifth, Walworth's assumption that there would not be shoes on the landing at the time of the Incident, particularly when he was carrying a box downstairs, is not an attendant circumstance, because there is no evidence that this fact distracted him or prevented him from looking where he was stepping. Walworth testified that the only thing preventing him from looking where he was walking was the box. Further, carrying a box was not outside Walworth's control.

{¶ 38} In summary, the shoes were an open and obvious condition in plain view and readily discoverable by a reasonable person. Walworth did not present any Civ.R. 56(C) evidence to challenge this fact, and Khoury is entitled to judgment as a

matter of law. Accordingly, we hold that the trial court did not err by granting summary judgment in favor of Khoury, and Walworth's sole assignment of error is overruled.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LISA B. FORBES, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR