[Cite as *SPM Acquisition, L.L.C. v. Italian Restaurant Group, L.L.C.*, 2026-Ohio-1279.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SPM ACQUISITION, LLC,                  :

    Plaintiff-Appellee,            :

                                 No. 115382

    v.                             :

ITALIAN RESTAURANT GROUP,
LLC, ET AL.,                           :

    Defendants-Appellants.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED IN PART AND REMANDED
**RELEASED AND JOURNALIZED:** April 9, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-985534

---

### *Appearances:*

Honigman LLP and David P. Vallas; Mark J. VanRooy, *for appellee.*

Marshall Dennehey, P.C. and David J. Fagnilli, *for appellant* Brinker International, Inc.

EILEEN A. GALLAGHER, J.:

{¶ 1} Brinker International, Inc. ("Brinker") appeals the trial court's order granting summary judgment against it and the trial court's failure to disqualify one of the attorneys in this breach-of-contract case. For the following reasons, we

reverse the judgment of the trial court, in part, and remand this matter for further proceedings.

{¶ 2} On June 25, 1996, the predecessor to SPM Acquisitions, LLC ("SPM"), acting as the landlord, entered into a commercial lease (the "Lease") with the predecessor to Italian Restaurant Group, LLC, dba Romano's Macaroni Grill ("Romano's"), acting as the tenant, involving property located at 17095 Southpark Center in Strongsville (the "Property").[1] Also in June 1996 Brinker executed a separate document guaranteeing Romano's full performance of the Lease (the "Guarantee").

{¶ 3} In the summer 2023, Romano's defaulted on the Lease, vacated the Property and tendered possession of the Property to SPM. On September 15, 2023, SPM filed a complaint against Romano's and Brinker, alleging breach of contract in that Romano's failed to pay rent and other charges under the Lease.

{¶ 4} On November 6, 2024 the court signed and filed a stipulation and agreed judgment entry (the "Stipulation") between SPM and Romano's, which states, in part, that the Lease expires June 30, 2027, Romano's vacated the premises and tendered possession of the Property to SPM on July 31, 2023 and, as of November 1, 2024, Romano's owed SPM $475,411.58, which accrued under the

---

[1] The Lease shows that, at the time the parties entered into the agreement, the landlord was Royalton Road Joint Venture and the tenant was Brinker Ohio, Inc. According to the record, SPM is a successor to Royalton Road Joint Venture and Romano's is a successor to Brinker Ohio, Inc. Brinker, which is a distinct entity from Brinker Ohio, Inc., is listed as the original guarantor in the documents.

Lease at the rate of $15,938.79 per month. In the Stipulation, the court entered judgment against Romano's in the amount of $475,411.58.

{¶ 5} On February 6, 2025 SPM filed a motion for summary judgment against Brinker. On April 24, 2025 Brinker filed a motion to disqualify one of SPM's attorneys. On May 5, 2025, the court granted SPM's summary-judgment motion and entered judgment against Brinker in the amount of $475,411.58 through October 2024, plus $15,938.79 for each month from November 2024 through the date of judgment, plus interest, attorney fees and costs. On May 7, 2025, the court rendered Brinker's motion to disqualify, moot.

{¶ 6} Brinker appeals and raises the following assignments of error for our review:

> I. The trial court erred by granting summary judgment on plaintiff/SPM Acquisition, L.L.C.'s breach of contract claim because a genuine issue of material fact remained.

> II. The trial court erred by not disqualifying SPM Acquisition, L.L.C.'s pro hac vice counsel, David P. Vallas, despite a clear conflict of interest.

## I. Law and Analysis

### A. Summary Judgment

#### 1. Standard of Review

{¶ 7} Appellate courts review a trial court's decision granting summary judgment under a de novo standard. *Walworth v. Khoury*, 2021-Ohio-3458, ¶ 17 (8th Dist.). Under Civ.R. 56(C), the party seeking summary judgment must prove that 1) there is no genuine issue of material fact, 2) they are entitled to judgment as a matter of law and 3) reasonable minds can come to but one conclusion and that

conclusion is adverse to the nonmoving party. *Dresher v. Burt*, 75 Ohio St.3d 280 (1996). A summary-judgment motion may be supported by "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." Civ.R. 56(C). "No evidence or stipulation may be considered except as stated in this rule." *Id.*

### 2. Breach of Contract

{¶ 8} To succeed on a breach-of-contract claim, a party must establish that 1) a binding agreement was formed, 2) the nonbreaching party performed its obligations under the agreement, 3) the other party failed to perform its obligations without legal excuse and 4) the nonbreaching party suffered damages as a result. *Carbone v. Nueva Constr. Group, L.L.C.,* 2017-Ohio-382, ¶ 14 (8th Dist.). This court has held that the "standard of review in an action for breach of contract is whether the trial court erred as a matter of law." *Unifund CCR, L.L.C. v. Johnson*, 2014-Ohio-4376, ¶ 7 (8th Dist.).

{¶ 9} The Ohio Supreme Court has held the following regarding reviewing a contract for an alleged breach: "Our primary role is to ascertain and give effect to the intent of the parties. We presume that the intent of the parties to a contract is within the language used in the written instrument. If we are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract." (Citations omitted.) *Saunders v. Mortensen*, 2004-Ohio-24, ¶ 9.

{¶ 10} "On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties. It is generally the role of the finder of fact to resolve ambiguity." (Citations omitted.) *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 12-13.

### 3. Mitigation of Damages

{¶ 11} In *Frenchtown Square Partnership v. Lemstone, Inc.,* 2003-Ohio-3648, ¶ 12, the Ohio Supreme Court held that "under the common law of contracts, mitigation is a fundamental tenet of a damage calculus." "The principle of mitigation of damages allows the defendant to reduce the amount of damages for which he is liable by showing extenuating facts or circumstances." *First Natl. Bank v. Cann*, 503 F.Supp. 419, 442 (N.D.Ohio 1980). The *Frenchtown* Court addressed the issue of "whether the duty to mitigate is applicable to commercial leases." *Id.* at ¶ 16. The court held that the "duty to mitigate arises in all commercial leases of real property, just as it exists in all other contracts." *Id.* at ¶ 18. The court explained that the landlord's "duty to mitigate requires only reasonable efforts." *Id.* at ¶ 19. Additionally, in *Apple Ohio, LLC v. Rose Italian Kitchen Solon, LLC,* 2023-Ohio-2880, ¶ 19 (8th Dist.), this court held that "[w]hether a landlord has made reasonable efforts to mitigate its damages is a question for the trier of fact."

{¶ 12} The *Frenchtown* Court also concluded that the duty to mitigate applies "barring contrary contract provisions . . . ." *Id.* at ¶ 20. *See also Apple Ohio* at ¶ 15, quoting *Frenchtown* at ¶ 12 (recognizing that, in *Frenchtown*, "the duty to

mitigate was eliminated by a contrary contract provision in a lease that provided the landlord 'has no duty to attempt to mitigate any damages' resulting from the tenant's breach"). In other words, the "parties are free to contract around the duty to mitigate." *CSRA Columbus OH Fitness Master Lessee, LLC v. Fitness & Sports Clubs, LLC,* 2025-Ohio-2645, ¶ 19 (5th Dist.).

{¶ 13} Furthermore, we note that "mitigation of damages is just that — a mitigation of damages incurred: the potential defense does not stop a plaintiff from asserting contract damages; instead, it can subtract from damages that have been suffered." *White v. Bowling Green State Univ.*, 2021-Ohio-4069, ¶ 17 (10th Dist.). "The doctrine of mitigation of damages is intended to prevent an inclusion in the damage award of such damages that could have been avoided by reasonable affirmative action by the injured party without substantial risk to such party." *Czarnecki v. Basta*, 112 Ohio App.3d 418, 423 (8th Dist. 1996).

### 4. Analysis

#### a. Ohio Cases Interpreting Mitigation Clauses

{¶ 14} In *B&G Props. Ltd. Partnership v. OfficeMax, Inc.,* 2013-Ohio-5255 (8th Dist.), this court found that the commercial lease at issue expressly stated that the parties invalidated the landlord's duty to mitigate damages. Section 7.1 of the *B&G* lease states that, in the event of a breach, "Tenant shall remain liable for the [rent] for the balance of said term, whether [the property] be relet or not . . . . Landlord shall not be liable for failure to relet the [property], and in the event of reletting, for failure to collect the rent under such reletting." *Id*. at ¶ 24.

{¶ 15} In *Scott Holding Co. v. Turbo Restaurants US, LLC*, 2024-Ohio-5240 (5th Dist.), the court found that the commercial lease at issue expressly stated that the parties invalidated the landlord's duty to mitigate damages. Section 13(d) of the *Scott* lease, which is titled "Default," states as follows: "Landlord shall have the right, but not the obligation, to relet the whole or part of the Premises upon terms which Landlord, in its sole discretion, deems appropriate . . . ." *Id.* at ¶ 40.

{¶ 16} In *CSRA Columbus OH Fitness Master Lessee, LLC v. Fitness & Sports Clubs, LLC,* 2025-Ohio-2645 (5th Dist.), the court found that the commercial lease at issue expressly stated that the parties invalidated the landlord's duty to mitigate damages. Section 8.2(d) of the *CSRA* lease, which is titled "Remedies," states as follows: "Landlord shall not be obligated to relet the [Property] and may recover damages hereunder without such consideration." *Id.* at ¶ 16.

{¶ 17} Unlike the preceding cases, in *Westfield Franklin Park Mall, LLC v. Vanity Shop of Grand Forks, Inc.,* 642 F.Supp.2d 756, 757 (N.D.Ohio 2008), the commercial lease at issue contained an explicit mitigation clause: "Landlord shall use its reasonable efforts to mitigate its damages hereunder; however the failure or refusal of Landlord to relet the [property] shall not affect Tenant's liability." The court found that "nothing in this provision, if read reasonably, relieves the landlord of its obligation to try to mitigate its damages by re-letting the premises to a suitable tenant." *Id.*

## b. SPM's Duty to Mitigate Damages

{¶ 18} In Brinker's first assignment of error, it argues that the trial court erred by granting summary judgment in favor of SPM and against Brinker. Specifically, Brinker's argument on appeal, since it was in opposition to summary judgment, is twofold. First, the Lease and Guarantee do not invalidate SPM's duty to mitigate damages and second, "there are issues of fact as to whether SPM failed to mitigate damages."

{¶ 19} SPM argues that the "plain language of Section 14 [of the Lease] abrogated SPM's duty to mitigate by explicitly giving SPM the right and option — rather than the duty — to retake possession of the Premises, i.e., to mitigate." SPM further argues that "Section 14 also provides a separate measure of damages depending on whether SPM exercised its option to mitigate . . . . That is, SPM had one remedy if it retook possession of the Premises and did not exercise its option to mitigate ([Romano's] would be liable for rent as it accrued) and a different remedy if SPM retook possession of the Premises and did in fact mitigate ([Romano's] would be liable for the accelerated difference between the rents.)."

{¶ 20} Brinker, in its reply brief, argues that the language in Section 14 of the Lease affords SPM the "right and option" to retake possession of the Property after a default, but this is not necessarily the same thing as the "right and option to mitigate" or the "right and option to relet the Premises." According to Brinker, to say that retaking possession means the same thing as mitigating damages requires reading language into the Lease that is not there.

{¶ 21} In this case, the trial court found in favor of SPM and against Brinker regarding Brinker's obligation to guarantee Romano's performance of the Lease. Brinker does not raise the issue of liability for breach of contract in this appeal. Rather, the issue raised by Brinker on appeal is whether, under the Lease and the Guarantee, the parties agreed to abrogate SPM's duty to mitigate damages, and if not, whether SPM demonstrated on summary judgment reasonable efforts to mitigate its damages after Romano's defaulted.

{¶ 22} In its journal entry granting SPM's summary-judgment motion against Brinker, the trial court found as follows: "The court finds that the Lease and Guaranty in this case contain language abrogating the duty to mitigate damages." To support its decision, the trial court cited one provision from the Lease and one provision from the Guarantee.

{¶ 23} First, the trial court found that "the Lease requires [Romano's] to pay all amounts of rent as it accrues [sic] 'without deduction or setoff whatsoever." This language in the Lease is found in Section 3, which is titled <u>RENT</u>. Section 3(A) states, in part pertinent to this appeal, as follows: "Fixed Minimum Rent. [Romano's] agrees to pay to [SPM] as 'Fixed Minimum Rent' for the [Property] without deduction or set-off whatsoever . . . (i) . . . monthly installments of . . . $8,937.50" for 20 years.

{¶ 24} Second, the trial court found that "the Guaranty states that 'no act [sic] or omission of any kind on the part of [SPM] shall in any way affect or impair

this Guarantee.'" This language in the Guarantee is found on page one of the two-page document in the following unlabeled paragraph:

> Except as expressly provided herein, [Brinker] waives acceptance, notice of acceptance, presentment, demand, protest or any other notice of any kind, promptness in commencing and diligence in prosecuting suit and/or giving any notice of or in making any claim or demand upon [Romano's] and agrees that no action or omission of any kind on the part of [SPM] shall in any event affect or impair this Guarantee.

{¶ 25} Upon our de novo review of the Lease and Guarantee provisions on which the trial court relied, we find no explicit language stating that the parties agreed that SPM was abrogating its duty to mitigate damages. We note that the words "mitigate," "mitigation," "relet" and "reletting" are nowhere to be found in these provisions of the Lease or Guarantee. To compare, the lease provisions at issue in *Scott*, *CSRA*, *B&G* and *Westfield* all contained at least one of these words, and the courts, in all four cases, found that the parties' intent concerning mitigation was expressly stated in each lease. In other words, these two provisions in this case do not expressly concern mitigation.

{¶ 26} We now review each of these two contract provisions to determine if ambiguous language demonstrated the parties' intent to contract around SPM's duty to mitigate.

{¶ 27} Section 3 of the Lease governs rent and states, in part, that Romano's shall pay rent "without deduction or set-off whatsoever." The Ohio Supreme Court has held that a "set-off, whether legal or equitable, must relate to cross demands in the same right, and when there is mutuality of obligation." *Andrews v. State*, 124

Ohio St. 348 (1931), paragraph five of the syllabus. Additionally, a set-off is a "right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." *Witham v. South Side Bldg. & Loan Assn.*, 133 Ohio St. 560, 562 (1938). *See also Franciscan Communities, Inc. v. Rice*, 2024-Ohio-4796, ¶ 10 (8th Dist.) (recently citing *Andrews* and *Witham* to define set-off).

{¶ 28} Because Section 3 of the Lease governs rent rather than default, and because the definition of set-off does not include mitigation of damages after a breach of contract, we conclude that Section 3 of the Lease sheds no light on the issue of whether the parties agreed to SPM abrogating its duty to mitigate damages in the event of a default by Romano's. In the cases we reviewed, we found no leases contemplating mitigation — either for or against it — in the "rent" section.

{¶ 29} The provision of the Guarantee at issue states that Brinker waives "notice of any kind [and] promptness in commencing and diligence in prosecuting suit" and agrees that SPM's actions or omissions shall not affect the Guarantee. As stated, mitigation is a calculus of damages. Mitigation does not affect the issue of liability for breach of contract. Indeed, there can be no mitigation without liability and, more specifically, there can be no mitigation of damages if no injury occurred. *See Boyd v. Cogan*, 2012-Ohio-1604, ¶ 11 (4th Dist.) (holding that "a party must actually be injured before the law imposes a duty to mitigate"). Because whether SPM mitigated its damages does not affect Brinker's liability under the Guarantee,

this provision of the Guarantee also sheds no light on whether the parties agreed SPM abrogated its duty to mitigate.

{¶ 30} Section 14 of the Lease, which is titled DEFAULT BY TENANT, states, in part in the first paragraph, that if Romano's defaults:

> LANDLORD, at its option, may terminate this Lease and re-enter upon the Demised Premises and take possession thereof with full right to sue for and collect all sums or amounts with respect to which TENANT may then be in default and accrued up to the time of such entry, including damages to LANDLORD by reason of any breach or default on the part of TENANT, *or*
>
> LANDLORD may elect to bring suit for the collection of such rents and damages without entering into possession of the Demised Premises or voiding this Lease.

(Emphasis and paragraph break added.)

{¶ 31} This first paragraph of Section 14 of the Lease expressly states that, if Romano's defaults, SPM has two options. First, SPM may terminate the Lease, retake possession of the Property and sue Romano's for damages. Second, SPM may sue Romano's for damages without retaking possession of the Property and without voiding the Lease. These options are listed in the alternative and separated by the word "or."

{¶ 32} Section 14 of the Lease states, in pertinent part in the second paragraph, that if Romano's defaults:

> LANDLORD shall also have the right and option . . . to retake possession of the Demised Premises from TENANT . . . and shall not be deemed to have absolved or discharged TENANT from any of its obligations and liabilities for the remainder of the term of this Lease, and TENANT shall . . . continue to be liable for the payment of rents . . . in monthly installments . . . and, if in the event of such ouster, LANDLORD rents or leases the Demised Premises to some other

[entity] for an aggregate rent during the portion of such new lease co-extensive with the term created hereunder which is less than the rent and other charges which TENANT would pay hereunder for such period and TENANT thereafter defaults in the payment of monthly deficits, LANDLORD may . . . recover the difference between the rental provided for in said new lease for the portion of the term co-extensive with the term created hereunder and the rent which TENANT would pay hereunder for such period, as the same shall accrue.

{¶ 33} This second paragraph of Section 14 of the Lease expands on SPM's first option, contemplating mitigation if SPM retakes possession of the Property in the event Romano's defaults. Under the Lease, if SPM retakes possession of the Property, Romano's is still obligated to pay the rent monthly. Additionally, if SPM leases the Property to another entity, i.e., mitigates it damages, SPM may recover the difference in rent "as the same shall accrue."

{¶ 34} Upon our de novo review of Section 14 of the Lease, we find no explicit language expressing that the parties agreed that SPM abrogated its duty to mitigate damages. Nothing in Section 14 of the Lease, when read reasonably, demonstrates that the parties agreed to SPM abrogating its duty to mitigate. Rather, we find that Section 14 of the Lease expressly demonstrates that the parties contemplated mitigation when agreeing to the terms of the contract and did not abrogate mitigation by contracting around it.

{¶ 35} We further find that the parties agreed in the Stipulation that, when Romano's defaulted on the Lease, it "vacated and tendered possession of the [Property] to [SPM] on or about July 31, 2023." The Stipulation was attached to SPM's summary-judgment motion. As stated previously, a stipulation is considered

proper evidence upon which to base a summary-judgment ruling pursuant to Civ.R. 56(C). Therefore, it is undisputed that, upon Romano's default, SPM retook possession of the Property in accordance with the first option in Section 14 of the Lease. *See Frenchtown Square Partnership v. Lemstone, Inc.,* 2003-Ohio-3648, ¶ 21 ("A lessor has a duty to mitigate damages caused by a lessee's breach of a commercial lease if the lessee abandons the leasehold."). Under this first option, mitigation is contemplated rather than abrogated. In other words, there is no provision in the Lease contrary to SPM's inherent duty to mitigate.

{¶ 36} Accordingly, we find that there is no genuine issue of material fact regarding mitigation, and SPM had a duty to mitigate its damages as a matter of law under the Lease after it retook possession of the Property. The trial court erred when it held otherwise.

### c. Factual Dispute Regarding Whether SPM Reasonably Attempted to Mitigate its Damages

{¶ 37} Having found SPM's duty to mitigate was not invalidated, we turn to whether SPM demonstrated on summary judgment that it made reasonable efforts to mitigate in this case. The trial court found no duty to mitigate and, therefore, did not address whether SPM mitigated its damages. SPM attached to its motion for summary judgment an affidavit of the leasing agent for the Property, which sets forth his "efforts to lease" the Property. Brinker attached to its brief in opposition to summary judgment the affidavit of its chief legal officer, who opined that SPM's efforts to lease the Property were not reasonable. As stated previously, affidavits are proper Civ.R. 56(C) evidence upon which to base a summary judgment ruling.

{¶ 38} Upon review, we find genuine issues of material fact concerning whether SPM's efforts to mitigate were reasonable. In *Telecom Acquisition Corp. I v. Lucic Enters.*, 2016-Ohio-1466, ¶ 93 (8th Dist.), this court held as follows:

> In summary judgment proceedings, a court may not weigh the evidence or judge the credibility of sworn statements, properly filed in support of or in opposition to a summary judgment motion, and must construe the evidence in favor of the nonmoving party . . . . When trial courts choose between competing affidavits and testimony, they improperly determine credibility and weigh evidence contrary to summary judgment standards.

*See also Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993) ("Credibility issues typically arise in summary judgment proceedings when one litigant's statement conflicts with another litigant's statement over a fact to be proved. Since resolution of the factual dispute will depend, at least in part, upon the credibility of the parties or their witnesses, summary judgment in such a case is inappropriate.").

{¶ 39} Accordingly, the trial court erred, in part, by granting SPM's summary-judgment motion. Granting summary judgment concerning Brinker's liability under SPM's breach-of-contract claim is not at issue in this appeal, and the trial court's judgment that Brinker breached the Guarantee stands. However, the trial court erred by granting summary judgment in favor of SPM on the issue of mitigation and awarding damages. Based on the undisputed facts in the record, SPM had a duty to mitigate its damages, as a matter of law, after Romano's defaulted on the Lease. Additionally, there is a factual dispute concerning whether SPM's mitigation efforts were reasonable and, thus, there is a factual dispute regarding the amount of damages for which Brinker is liable in this case. *See Apple Ohio, LLC v.*

*Rose Italian Kitchen Solon, LLC,* 2023-Ohio-2880, ¶ 19 (8th Dist.) ("Whether a landlord has made reasonable efforts to mitigate its damages is a question for the trier of fact.").

{¶ 40} Accordingly, Brinker's first assignment of error is sustained in part, and this case is remanded to the trial court for further proceedings by the trier of fact regarding mitigation and the amount of damages.

### B. Motion to Disqualify Attorney for Conflict of Interest

#### 1. Law

{¶ 41} "The trial court has wide discretion in the consideration of motions to disqualify counsel [and] [t]he determination of the trial court will not be reversed upon appeal in the absence of an abuse of discretion." *Fried v. Abraitis*, 2016-Ohio-934, ¶ 11 (8th Dist.). The Ohio Supreme Court has defined abuse of discretion as "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 42} "In determining whether to disqualify a party's attorney based on a conflict of interest, Ohio courts have applied the *Dana* test." *Fried* at ¶ 12. In *Dana Corp. v. Blue Cross & Blue Shield Mut.,* 900 F.2d 882, 889 (6th Cir. 1990), the court held as follows:

> A three-part test for disqualification exists: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification.

## 2. Analysis

{¶ 43} In Brinker's second assignment of error, it argues that the trial court erred by not disqualifying one of SPM's attorneys based on conflict of interest.

{¶ 44} On April 3, 2025, Illinois attorney David Vallas ("Vallas") filed a motion in the trial court to appear pro hac vice for SPM in this case. The trial court granted this motion on April 8, 2025. On April 24, 2025, Brinker moved to disqualify Vallas based on a conflict of interest alleging that Vallas previously represented Brinker in related litigation. After granting SPM's summary-judgment motion, the court denied the motion to disqualify Vallas as moot.

{¶ 45} Given our disposition of Brinker's first assignment of error, we find that the trial court erred by failing to rule on the merits of Brinker's motion to disqualify Vallas because this issue is not moot. The Ohio Supreme Court has held that issues are moot "when they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations." (Cleaned up.) *State ex rel. Cincinnati Enquirer v. Hunter,* 2014-Ohio-5457, ¶ 4.

{¶ 46} We cannot reach a conclusion regarding the merits of Brinker's motion to disqualify Vallas for the first time on appeal. Instead, we remand this case to the trial court to make this determination for the first time. *See State v. Peagler*, 76 Ohio St.3d 496, 501 (1996) ("A court of appeals cannot consider the issue for the first time without the trial court having had an opportunity to address the issue.").

{¶ 47} Accordingly, Brinker's second assignment of error is overruled and this case is remanded for the trial court to rule on the merits of Brinker's motion to disqualify Vallas.

{¶ 48} Judgment reversed, in part, and case remanded for further proceedings by the trier of fact regarding whether SPM made reasonable efforts to mitigate its damages, as well as the amount of damages awarded, and for a hearing to determine whether appellee and/or counsel David P. Vallas is responsible for attorney fees incurred by appellants and, if so, the amount thereof.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common please court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
DEENA R. CALABRESE, J., CONCUR